Michael R. Lozeau (State Bar No. 142893)
Richard T. Drury (State Bar No. 163559)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
        richard@lozeaudrury.com
        doug@lozeaudrury.com

Gideon Kracov (State Bar No. 179815)
LAW OFFICE OF GIDEON KRACOV
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Tel: (213) 629-2071
Fax: (213) 623-7755
Email: gk@gideonlaw.net

Attorneys for Plaintiff
CENTER FOR COMMUNITY
ACTION AND ENVIRONMENTAL
JUSTICE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>TREE ISLAND WIRE (USA), INC., a corporation,<br><br>　　　　　Defendant. | Case No. 5:14-cv-1858 _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE

("CCAEJ"), a California non-profit association, by and through its counsel, hereby

COMPLAINT

1

alleges:

## I.     JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act" or "the Act").  This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).  The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2.      On June 24, 2014, Plaintiff provided notice of Defendant's violations of the Act, and of its intention to file suit against Defendant, to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the California Regional Water Quality Control Board, Santa Ana Region ("Regional Board"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of CCAEJ's notice letter is attached as Exhibit A, and is incorporated by reference.

3.      More than sixty days have passed since notice was served on Defendant

COMPLAINT

and the State and federal agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  This action's claim for civil penalties is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4.      Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## II.     <u>INTRODUCTION</u>

5.      This complaint seeks relief for Defendant's discharges of polluted storm water and non-storm water pollutants from Defendant TREE ISLAND WIRE (USA), INC.'s ("TI Wire" or "Defendant") industrial facility located at 12459 Arrow Route in Rancho Cucamonga, California ("the Facility") in violation of the Act and National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ and Water Quality Order No. 97-03-DWQ (hereinafter the "Permit" or "General Permit").  Defendant's violations of the discharge, treatment technology, monitoring requirements, and other procedural and substantive requirements of the Permit and the Act are ongoing and continuous.

///

COMPLAINT

### III.   **PARTIES**

6.      Plaintiff CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE ("CCAEJ") is a non-profit public benefit corporation under the laws of the State of California with its main office in Jurupa Valley, California.  CCAEJ is dedicated to working with communities to advocate for environmental justice and pollution prevention.  CCAEJ and its members are deeply concerned with protecting the environment in and around their communities, including the Santa Ana River Watershed.  To further these goals, CCAEJ actively seeks federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

7.      CCAEJ has members living in the community adjacent to the Facility and the Santa Ana River Watershed.  They enjoy using the Santa Ana River for recreation and other activities.  Members of CCAEJ use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged.  Members of CCAEJ use those areas to recreate and view wildlife, among other things.  Defendant's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of CCAEJ's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the Permit.  The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

COMPLAINT

8.      Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

9.      Defendant TI WIRE COMPANY is a corporation that operates an industrial and reinforcing wire products facility in Rancho Cucamonga, California.

## IV.   STATUTORY BACKGROUND

10.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

11.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(p).

12.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

13.     The State Board elected to issue a statewide general permit for industrial storm water discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

14.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

15.     The General Permit contains several prohibitions.  Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  BAT and BCT include both nonstructural and structural measures. General Permit, Section A(8).  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit prohibits storm water

discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

16.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet. Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent to Comply ("NOI").  The General Permit requires existing dischargers to have filed their NOIs before March 30, 1992.

17.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP").  The SWPPP must describe storm water control facilities and measures that comply with the BAT and BCT standards.  The General Permit requires that an initial SWPPP have been developed and implemented before October 1, 1992.  The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (Section A(2)).  The SWPPP's BMPs must implement BAT and BCT

(Section B(3)).  The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials handled and stored at the site (Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur (Section A(6)).  The SWPPP must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (Section A(7), (8)).  The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (Sections A(9), (10)).

18.     Section C(11)(d) of the General Permit's Standard Provisions requires dischargers to report any noncompliance to the Regional Board.  *See also* Section E(6).  Section A(9) of the General Permit requires an annual evaluation of storm

water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities.

19.     The General Permit requires dischargers commencing industrial activities before October 1, 1992, to develop and implement an adequate written monitoring and reporting program no later than October 1, 1992.  Existing facilities covered under the General Permit must implement all necessary revisions to their monitoring programs no later than August 1, 1997.

20.     As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.  Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report.  Dischargers must also collect and analyze storm water samples from at least two storms per year.  Section B(5)(a) of the General Permit requires that dischargers "shall collect storm water samples during the first hour of discharge from (1) the first storm event of the wet season, and (2) at least one other storm event in the wet season.  All storm water discharge locations shall be sampled."  Section B(5)(c)(i) requires dischargers to sample and

analyze during the wet season for basic parameters, such as pH, total suspended solids, electrical conductance, total organic content or oil & grease, and certain industry-specific parameters.  Section B(5)(c)(ii) requires dischargers to sample for toxic chemicals and other pollutants likely to be in the storm water discharged from the facility.  Section B(5)(c)(iii) requires discharges to sample for parameters dependent on the standard industrial classification ("SIC") codes for activities at the facility.  Section B(7)(a) indicates that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event."  Section B(7)(c) requires that "if visual observation and sample collection locations are difficult to observe or sample…facility operators shall identify and collect samples from other locations that represent the quality and quantity of the facility's storm water discharges from the storm event."

21.     Section B(14) of the General Permit requires dischargers to submit an annual report by July 1 of each year to the executive officer of the relevant Regional Board.  The annual report must be signed and certified by an appropriate corporate officer.  Sections B(14), C(9), (10).  Section A(9)(d) of the General Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Permit.  *See also* Sections C(9), C(10) and B(14).

22.     The General Permit does not provide for any mixing zones by

dischargers.  The General Permit does not provide for any dilution credits to be applied by dischargers.

23.     The Regional Board has established water quality standards for the Santa Ana River Watershed in the "Water Quality Control Plan for the Santa Ana River Basin (Region 8)," generally referred to as the Basin Plan.

24.     The Basin Plan includes a narrative toxicity standard which states that "[t]oxic substances shall not be discharged at levels that will bioaccumulate in aquatic resources to levels which are harmful to human health."

25.     The Basin Plan includes a narrative oil and grease standard which states that "[w]aste discharges shall not result in deposition of oil, grease, wax, or other material in concentrations which result in a visible film or in coating objects in the water, or which cause a nuisance or adversely affect beneficial uses."

26.     The Basin Plan provides that "waters shall not contain suspended or settleable solids in amounts which cause a nuisance or adversely affect beneficial uses..."

27.     The Basin Plan provides that "t]he pH of inland surface waters shall not be raised above 8.5 or depressed below 6.5…"

28.     The Basin Plan contains a narrative floatables standard which states that "[w]aste discharges shall not contain floating materials, including solids, liquids, foam or scum, which cause a nuisance or adversely affect beneficial uses."

COMPLAINT

29.     The Basin Plan contains a narrative color standard which states that "[w]aste discharges shall not result in coloration of the receiving waters which causes a nuisance or adversely affect beneficial uses. The natural color of fish, shellfish or other inland surface water resources used for human consumption shall not be impaired."

30.     The Basin Plan contains a nitrate standard that "[n]itrate-nitrogen standards shall not exceed 45 mg/L (as $NO_3$) or 10 mg/L (as N) in inland surface waters designated MUN as a result of controllable water quality factors."

31.     The EPA has adopted a freshwater numeric water quality standard for zinc of 0.120 mg/L (Criteria Maximum Concentration – "CMC").  65 Fed.Reg. 31712 (May 18, 2000).

32.     EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  EPA has established Parameter Benchmark Values for the following parameters, among others: pH – 6.0 - 9.0 standard units ("s.u."); total suspended solids ("TSS") – 100 mg/L; oil and grease ("O&G") – 15 mg/L; nitrate + nitrite as nitrogen ("N+N") – 0.68 mg/L; aluminum – 0.75 mg/L; iron – 1.0 mg/L; and zinc – 0.13 mg/L.  The benchmark value for zinc is also hardness dependent.  The value here is based on a hardness range of 100-125 mg/L $CaCO_3$, which is the default listing in the California Toxics Rule.

COMPLAINT

33.     Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements.  33 U.S.C. §§1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 - 19.4.

## V.     STATEMENT OF FACTS

34.     Defendant TI Wire operates an industrial and reinforcing wire products manufacturing facility located at 12459 Arrow Route in Rancho Cucamonga, California.  On information and belief, CCAEJ alleges that the Facility is engaged in the manufacturing of wire and wire products.  The Facility falls within SIC Code 3315.  The majority of the Facility is paved and used for manufacturing, processing, storing, and transporting materials related to production processes.  On information and belief, Plaintiff alleges that there are at least two large buildings located on the property.  Plaintiff is informed and believes, and thereupon alleges that manufacturing, processing, and storage of materials is conducted both inside and outside of these buildings.

35.     Defendant channels and collects storm water falling on the Facility through a series of storm water drains that lead to at least three storm water outfalls.

COMPLAINT

13

The Facility's outfalls discharge to channels that flow into San Bernardino County's municipal storm sewer system, which discharges into Day Creek, which flows into Reach 3 of the Santa Ana River.

36.     On information and belief, Plaintiff alleges that the industrial activities at the site include the manufacturing of wire and wire products, including but not limited to bulk nails, catch coils, electric fence wire, fence accessories, galvanized chain link fence wire, high carbon pulp bailing and unitizing wire, high carbon recycling wire, high carbon upholstery spring wire, high-tensile fence wire, hog and livestock panels, low carbon bright wire, low carbon galvanized wire, merchant wire coils, mine mesh, packages nails and fasteners, rebar tie wire, and welded wire reinforcement.

37.     On information and belief, Plaintiff alleges that all storm water discharges from the Facility contain storm water that is commingled with runoff from areas at the Facility where industrial processes occur.

38.     Significant activities at the site take place outside and are exposed to rainfall.  These activities include the production and storage of the numerous types of materials and finished products handled by the Facility.  Loading and delivery of materials occurs outside.  Trucks enter and exit the Facility directly from and to a public road.  Outdoor areas of the Facility are exposed to storm water and storm flows due to the lack of overhead coverage, berms, and other storm water controls.

COMPLAINT

14

39.     Industrial machinery, heavy equipment and vehicles, including trucks and forklifts, are operated at the Facility in areas exposed to storm water flows. Plaintiff is informed and believes, and thereupon alleges, that such machinery and equipment leak contaminants such as oil, grease, diesel fuel, coolant, and hydraulic fluids that are exposed to storm water flows, and that such machinery and equipment track sediment and other contaminants throughout the Facility.  Plaintiff is informed and believes, and thereupon alleges that storm water flows easily over the surface of the Facility, collecting suspended sediment, dirt, oils, grease, metals, and other pollutants as it flows toward the storm water drains.  Storm water and any pollutants contained in that storm water entering the drains flows directly to the Facility's outfalls which discharge to channels that flow into San Bernardino County's municipal storm sewer system, which discharges into Day Creek, which flows into Reach 3 of the Santa Ana River.

40.     The management practices at the Facility are wholly inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The Facility lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with these and other exposed sources of contaminants.  The Facility lacks sufficient structural controls to prevent the discharge of water once contaminated.  The Facility lacks adequate storm

water pollution treatment technologies to treat storm water once contaminated.

41.    Since at least February 5, 2009, Defendant has taken samples or arranged for samples to be taken of storm water discharges at the Facility.  The sample results were reported in the Facility's annual reports submitted to the Regional Board. Defendant TI Wire certified each of those annual reports pursuant to Sections A and C of the General Permit.

42.    Since at least February 13, 2009, the Facility has detected pH, TSS, zinc, aluminum, and iron in storm water discharged from the Facility.  Levels of these pollutants detected in the Facility's storm water have been in excess of EPA's numeric parameter benchmark values.  Levels of these pollutants detected in the Facility's storm water have been in excess of and/or outside of the parameters for water quality standards established in the Basin Plan, as well in violation of narrative standards established in the Basin Plan.

43.    The following discharges of pollutants from the Facility have contained concentrations of pollutants in excess of numeric water quality standards established in the Basin Plan and the California Toxics Rule as well as narrative standards in the Basin Plan.  They have thus violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) and are evidence of ongoing violations of Effluent Limitation B(3) of the General Industrial Storm Water Permit.

COMPLAINT

| Date | Parameter | Observed Concentration / Conditions | Basin Plan Water Quality Standard / California Toxics Rule | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 12/19/2013 | pH | 8.9 s.u. | 6.5 – 8.5 s.u. | E-1 West Culvert |
| 12/19/2013 | pH | 8.8 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 10/28/2013 | pH | 8.8 s.u. | 6.5 – 8.5 s.u. | E-2 South of Office |
| 10/28/2013 | pH | 8.7 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 2/8/2013 | pH | 9.1 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 2/8/2013 | pH | 8.9 s.u. | 6.5 – 8.5 s.u. | E-2 South of Office |
| 11/4/2011 | pH | 8.7 s.u. | 6.5 – 8.5 s.u. | E-1 West Culvert |
| 11/4/2011 | pH | 8.9 s.u. | 6.5 – 8.5 s.u. | E-2 South of Office |
| 11/4/2011 | pH | 8.8 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 10/6/2011 | pH | 9.2 s.u. | 6.5 – 8.5 s.u. | E-1 West Culvert |
| 10/6/2011 | pH | 8.8 s.u. | 6.5 – 8.5 s.u. | E-2 South of Office |
| 10/6/2011 | pH | 8.8 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 4/28/2010 | pH | 9 s.u. | 6.5 – 8.5 s.u. | E-1 West Culvert |
| 4/28/2010 | pH | 9 s.u. | 6.5 – 8.5 s.u. | E-2 South of Office |
| 4/28/2010 | pH | 8.7 s.u. | 6.5 – 8.5 s.u. | E-3 South of EVG |
| 12/19/2013 | Zinc | 0.94 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 12/19/2013 | Zinc | 0.4 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 10/28/2013 | Zinc | 0.16 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 10/28/2013 | Zinc | 1.7 mg/L | 0.12 mg/L (CMC) | E-2 South of Office |
| 10/28/2013 | Zinc | 0.69 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 2/8/2013 | Zinc | 0.14 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 2/8/2013 | Zinc | 4.3 mg/L | 0.12 mg/L (CMC) | E-2 South of Office |
| 11/4/2011 | Zinc | 2 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |

COMPLAINT

17

| | | | | |
|---|---|---|---|---|
| 11/4/2011 | Zinc | 1.2 mg/L | 0.12 mg/L (CMC) | E-2 South of Office |
| 11/4/2011 | Zinc | 0.46 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 10/6/2011 | Zinc | 0.66 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 10/6/2011 | Zinc | 0.45 mg/L | 0.12 mg/L (CMC) | E-2 South of Office |
| 10/6/2011 | Zinc | 0.82 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 10/6/2010 | Zinc | 1.7 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 10/6/2010 | Zinc | 1 mg/L | 0.12 mg/L (CMC) | E-2 South of Office |
| 10/6/2010 | Zinc | 0.45 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 4/28/2010 | Zinc | 0.27 mg/L | 0.12 mg/L (CMC) | E-1 West Culvert |
| 4/28/2010 | Zinc | 0.14 mg/L | 0.12 mg/L (CMC) | E-3 South of EVG |
| 4/30/2014 | Narrative | Cloudy, Debris | Basin Plan at 4-16; Basin Plan at 4-11 | Discharge E1 |
| 12/19/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E1 |
| 12/19/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E3 |
| 11/21/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E1 |
| 11/21/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E2 |
| 11/21/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E3 |
| 10/28/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E1 |
| 10/28/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E2 |
| 10/28/2013 | Narrative | Cloudy | Basin Plan at 4-16 | Discharge E3 |
| 2/8/2013 | Narrative | Cloudy, Dirt | Basin Plan at 4-16 | E-2 South of Office |
| 3/31/2012 | Narrative | Cloudy | Basin Plan at 4-16 | E-2 South of Office |
| 3/31/2012 | Narrative | Cloudy | Basin Plan at 4-16 | E-3 South of EVG |
| 1/21/2012 | Narrative | Cloudy grey water | Basin Plan at 4-16 | E-2 South of Office |
| 1/21/2012 | Narrative | Cloudy grey water | Basin Plan at 4-16 | E-3 South of EVG |
| 10/5/2011 | Narrative | Cloudy grey water | Basin Plan at 4-16 | E-1 West Culvert |
| 10/5/2011 | Narrative | Cloudy grey water | Basin Plan at 4-16 | E-2 South of Office |

COMPLAINT

| 10/5/2011 | Narrative | Cloudy grey water | Basin Plan at 4-16 | E-3 South of EVG |
|---|---|---|---|---|
| 10/5/2010 | Narrative | Oil sheen and murky water | Basin Plan at 4-15; Basin Plan at 4-16 | E-1 West Culvert |
| 10/5/2010 | Narrative | Oil sheen and murky water | Basin Plan at 4-15; Basin Plan at 4-16 | E-2 South of Office |
| 10/5/2010 | Narrative | Oil sheen and murky water | Basin Plan at 4-15; Basin Plan at 4-16 | E-3 South of EVG |

44.     The level of pH in storm water detected by the Facility has been outside the range of the benchmark value for pH of 6.0 – 9.0 standard units ("s.u.") established by EPA.  The level of pH in storm water detected by the Facility has been outside the range of 6.5 – 8.5 s.u. established by the Basin Plan.  Defendant measured storm water discharges with a pH level in excess of 8.5 s.u. in almost every storm water sample taken at the Facility for the past five years, including December 19, 2013; October 28, 2013; February 8, 2013; November 4, 2011; October 6, 2011; October 6, 2010; and April 28, 2010.  In addition, the Facility measured pH levels in excess of 9.0 s.u. on February 8, 2013, and October 6, 2011.

45.     The level of TSS in storm water detected by the Facility has exceeded the benchmark value for TSS of 100 mg/L established by EPA.  For example, on October 28, 2013, the level of TSS measured by Defendant at the "E-2" outfall was 1300 mg/L.  That level of TSS is 13 times the benchmark value for TSS.  TI Wire also has measured levels of TSS in storm water discharged from the Facility in excess

of 100 mg/L on February 8, 2013; November 4, 2011; October 6, 2011; and October 6, 2010.

46.     The levels of zinc in storm water detected by the Facility have exceeded the freshwater numeric water quality standard established by the EPA of 0.12 mg/L for zinc (CMC).  For example, on October 28, 2013, the level of zinc measured from one of the Facility's storm water outfalls was 1.7 mg/L.  That level of zinc is over 14 times the CMC for zinc.

47.     The level of zinc in storm water detected by the Facility has exceeded the benchmark value for zinc of 0.13 mg/L established by EPA.  For example, on October 28, 2013, the level of zinc measured by Defendants at one of the Facility's outfalls was 1.7 mg/L.  That level of zinc is over 13 times the benchmark value for zinc.  The Facility also has measured levels of zinc in storm water discharged from the Facility in excess of 0.13 mg/L in nearly every other storm water sample it has taken for the past five years, including December 19, 2013; February 8, 2013; November 4, 2011; October 6, 2011; October 6, 2010; and April 28, 2010.

48.     The level of aluminum in storm water detected by the Facility has exceeded the benchmark value for aluminum of 0.75 mg/L established by EPA.  For example, on October 28, 2013, the level of aluminum measured by Defendants at one of the Facility's outfalls was 26 mg/L.  That level of aluminum is almost 35 times the benchmark value for aluminum.  The Facility also has measured levels of aluminum

COMPLAINT

in storm water discharged from the Facility in excess of 0.75 mg/L in nearly every

other storm water sample it has taken for the past five years, including December 19,

2013; February 8, 2013; November 4, 2011; October 6, 2011; October 6, 2010; and

April 28, 2010.

49.     On information and belief, Plaintiff alleges that Defendant failed to

analyze its storm water discharges for iron during the past five years.  Section

B(5)(c)(ii) of the General Permit requires the Facility to analyze storm water samples

for "toxic chemicals and other pollutants that are likely to be present in storm water

discharges in significant quantities."  During the 2008-2009 wet season, Defendant

analyzed its storm water discharges for iron and measured levels in every sample well

in excess of the EPA's Benchmark value for iron of 1.0 mg/L.  In addition, the

Facility's Annual Reports mention iron oxide from mechanical de-scaling operations

as a potential pollutant source.  On information and belief, Plaintiff alleges that iron

is likely to be present in Defendant's storm water discharges.

50.     On information and belief, Plaintiff alleges that Defendant failed to

analyze its storm water discharges for N+N during the past five years.  During the

2006-2007 wet season, Defendant analyzed its storm water discharges for N+N and

measured levels in every sample well in excess of the EPA's Benchmark value for

N+N of 0.68 mg/L.  On information and belief, Plaintiff thus alleges that N+N is

likely to be present in Defendant's storm water discharges.

COMPLAINT

21

51.     On information and belief, Plaintiff alleges that since at least July 7, 2009, Defendant has failed to implement BAT and BCT at the Facility for its discharges of pH, TSS, iron, N+N, zinc, aluminum, and other un-monitored pollutants.  Section B(3) of the General Permit requires that Defendant implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

52.     On information and belief, Plaintiff alleges that since at least July 7, 2009, Defendant has failed to implement an adequate Storm Water Pollution Prevention Plan for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not set forth site-specific best management practices for the Facility that are consistent with BAT or BCT for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not include an adequate assessment of potential pollutant sources, structural pollutant control measures employed by the Defendant, a list of actual and potential areas of pollutant contact, or an adequate description of best management practices to be implemented at the Facility to reduce pollutant discharges.  According to information available to CCAEJ, Defendant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges,

COMPLAINT

that the SWPPP does not include each of the mandatory elements required by Section A of the General Permit.

53.     Information available to CCAEJ indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events from the Facility directly to channels that flow into San Bernardino County's municipal storm sewer system, which discharges into Day Creek, which flows into Reach 3 of the Santa Ana River.

54.     Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the Facility's SWPPP and site-specific BMPs consistent with Section A(9) of the General Permit.

55.     Plaintiff is informed and believes that Defendant failed to submit to the Regional Board a true and complete annual report certifying compliance with the General Permit since at least June 28, 2010.  Pursuant to Sections A(9)(d), B(14), and C(9), (10) of the General Permit, Defendant must submit an annual report, that is signed and certified by the appropriate corporate officer, outlining the Facility's storm water controls and certifying compliance with the General Permit.  Plaintiff is informed and believes, and thereupon alleges, that Defendant has signed incomplete annual reports that purported to comply with the General Permit when there was significant noncompliance at the Facility.

56.     Information available to Plaintiff indicates that Defendant has not

COMPLAINT

23

fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## VI.   CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Failure to Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

57.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

58.    The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  Defendant has failed to implement BAT and BCT at the Facility for its discharges of pH, TSS, zinc, aluminum, iron, N+N, and other un-monitored pollutants in violation of Effluent Limitation B(3) of the General Permit.

59.    Each day since July 7, 2009, that Defendant has failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

60.    Defendant has been in violation of the BAT/BCT requirements every day since July 7, 2009.  Defendant continues to be in violation of the BAT/BCT

COMPLAINT

1   requirements each day that it fails to develop and fully implement BAT/BCT at the

2   Facility.

3

4   **SECOND CAUSE OF ACTION**
**Discharges of Contaminated Storm Water**
**in Violation of Permit Conditions and the Act**
5   **(Violations of 33 U.S.C. §§ 1311, 1342)**

6   61.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if

7
8   fully set forth herein.

9   62.     Discharge Prohibition A(2) of the General Permit requires that storm

10
11  water discharges and authorized non-storm water discharges shall not cause or threaten

12  to cause pollution, contamination, or nuisance.  Receiving Water Limitations C(1) and

13  C(2) of the General Permit require that storm water discharges and authorized non-
14
15  storm water discharges shall not adversely impact human health or the environment,

16  and shall not cause or contribute to a violation of any water quality standards contained

17
18  in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin

19  Plan.

20
21  63.     Plaintiff is informed and believes, and thereupon alleges, that since at least

22  July 7, 2009, Defendant has been discharging polluted storm water from the Facility in

23  excess of applicable water quality standards in violation of the Discharge Prohibition
24
25  A(2) of the General Permit.

26  64.     During every rain event, storm water flows freely over exposed materials,

27
28  waste products, and other accumulated pollutants at the Facility, becoming

COMPLAINT
25

contaminated with sediment, floating materials, oil sheens, zinc and other un-monitored pollutants at levels above or, in the case of pH, outside of applicable water quality standards.  The storm water then flows untreated from the Facility into channels that flow into San Bernardino County's municipal storm sewer system, which discharges into Day Creek, which flows into Reach 3 of the Santa Ana River.        .

65.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

66.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit.

67.    Every day since at least July 7, 2009, that Defendant has discharged and continues to discharge polluted storm water from the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

///

///

///

COMPLAINT

**THIRD CAUSE OF ACTION**
**Failure to Prepare, Implement, Review, and Update**
**an Adequate Storm Water Pollution Prevention Plan**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

68.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

69.     Section A and Provision E of the General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP no later than October 1, 1992.

70.     Defendant has failed to develop and implement an adequate SWPPP for the Facility.  Defendant's ongoing failure to develop and implement an adequate SWPPP for the Facility is evidenced by, *inter alia*, Defendant's outdoor production of various materials without appropriate best management practices; the continued exposure of significant quantities of various materials to storm water flows; the failure to either treat storm water prior to discharge or to implement effective containment practices; and the continued discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark values and water quality standards.

71.     Defendant has failed to update the Facility's SWPPP in response to the analytical results of the Facility's storm water monitoring.

72.     Each day since July 7, 2009, that Defendant has failed to develop, implement and update an adequate SWPPP for the Facility is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

COMPLAINT

27

73.    Defendant has been in violation of the SWPPP requirements every day since July 7, 2009.  Defendant continues to be in violation of the SWPPP requirements each day that it fails to develop and fully implement an adequate SWPPP for the Facility.

**FOURTH CAUSE OF ACTION**
**Failure to Develop and Implement an**
**Adequate Monitoring and Reporting Program**
**(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

74.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

75.    Section B of the General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including, *inter alia*, sampling and analysis of discharges) no later than October 1, 1992.

76.    Defendant has failed to develop and implement an adequate monitoring and reporting program for the Facility.  Defendant's ongoing failure to develop and implement an adequate monitoring and reporting program are evidenced by, *inter alia*, its failure to analyze its storm water discharges for iron and N+N during the past five years.

77.    Each day since July 7, 2009, that Defendant has failed to develop and implement an adequate monitoring and reporting program for the Facility in violation of the General Permit is a separate and distinct violation of the General Permit and

COMPLAINT

28

Section 301(a) of the Act, 33 U.S.C. § 1311(a). The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

## FIFTH CAUSE OF ACTION
## False Certification of Compliance in Annual Report
## (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

78.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

79.     Defendant has falsely certified compliance with the General Permit in each of the annual reports submitted to the Regional Board since at least June 28, 2010.

80.     Each day since at least June 28, 2010, that Defendant has falsely certified compliance with the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). Defendant continues to be in violation of the General Permit's certification requirement each day that it maintains its false certification of its compliance with the General Permit.

## VII.   RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendant to have violated and to be in violation of the Act as alleged herein;

b.   Enjoin Defendant from discharging polluted storm water from the

COMPLAINT

Facility unless authorized by the Permit;

      c.  Enjoin Defendant from further violating the substantive and procedural requirements of the Permit;

      d.  Order Defendant to immediately implement storm water pollution control and treatment technologies and measures that are equivalent to BAT or BCT and prevent pollutants in the Facility's storm water from contributing to violations of any water quality standards;

      e.  Order Defendant to comply with the Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

      f.  Order Defendant to prepare a SWPPP consistent with the Permit's requirements and implement procedures to regularly review and update the SWPPP;

      g.  Order Defendant to provide Plaintiff with reports documenting the quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

      h.  Order Defendant to pay civil penalties of $37,500 per day per violation for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

      i.  Order Defendant to take appropriate actions to restore the quality of waters impaired or adversely affected by their activities;

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

j.   Award Plaintiff's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

k.   Award any such other and further relief as this Court may deem appropriate.


Dated: September 5, 2014                    Respectfully submitted,

                                            LOZEAU DRURY LLP

                                  By:    _/s/ Douglas J. Chermak_____
                                         Douglas J. Chermak
                                         Attorneys for Plaintiff
                                         CENTER FOR COMMUNITY ACTION AND
                                         ENVIRONMENTAL JUSTICE

COMPLAINT